IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00179–EWN–MJW


INTERNATIONAL BEAUTY PRODUCTS, LLC,
a Colorado limited liability company,

      Plaintiff,

v.

GARTH BEVERIDGE, an individual,
DINAH BEVERIDGE, an individual, and
MUSTANG ENTERPRISES, INC.,
an administratively dissolved Nevada corporation,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a fraud and conversion case.  Plaintiff alleges that Defendant Garth Beveridge

made material misrepresentations while in Plaintiff's employment, and all Defendants

misappropriated Plaintiff's funds and assets.  This matter is before the court on: (1) "Defendant

Garth Beveridge's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue

Including Brief of Support," filed March 14, 2005; (2) "Defendant Mustang Enterprise's Motion

to Dismiss for Lack of Personal Jurisdiction and Improper Venue Including Brief of Support,"

filed March 29, 2005; and (3) "Defendant Dinah Beveridge's Motion to Dismiss for Lack of

Personal Jurisdiction and Improper Venue Including Brief of Support," filed May 5, 2005.

Jurisdiction is based on 28 U.S.C. § 1332 (2005).

## FACTS

### 1.   *Factual Background*

The following facts are taken largely from Plaintiff's amended complaint.  Plaintiff is a Colorado limited liability company with its principal place of business and headquarters in Colorado.  (First Am. Verified Compl.¶ 1 [filed Mar. 3, 2005] [hereinafter "Am. Compl."].) Plaintiff's primary warehouse facility and bank accounts are located in Colorado.  (*Id.* ¶ 15.) Plaintiff is in the business of manufacturing, marketing and selling cosmetic products under various  trademarks, including "Jerome Russell," "Hayashi," and "Tecnica."  (*Id.* ¶ 14.)  Plaintiff generates sales of its beauty products through sales representatives paid by commission and through in-house employees paid by salary.  (*Id.* ¶¶ 16–17.)

During the period of time relevant to the instant case, Defendant Garth Beveridge has been a resident of California or Texas.  (Def. Garth Beveridge's Mot. to Dismiss for Lack of Pers. Jurisdiction and Improper Venue Including Br. of Supp., Ex. A [Aff. of Garth Beveridge]  [filed Mar. 14, 2005] [hereinafter "Def. Garth Beveridge's Br."].)  Prior to August 21, 2002, Defendant Garth Beveridge was employed by two California corporations — Hay-Tec Acquisition Corporation ("Hay- Tec") and Jerome Russell Cosmetics USA ("Jerome Russell").  (Am. Compl. ¶ 22.)

On August 21, 2002, Plaintiff acquired the assets of Hay-Tec and Jerome Russell.  (*Id.* ¶

13.)  On the same date, Defendant Garth Beveridge terminated his employment with Hay-Tec and

Jerome Russell, and subsequently took employment with Plaintiff as president of Plaintiff's

Hay-Tec and Jerome Russell divisions. (*Id.* ¶ 23; Def. Garth Beveridge's Br., Ex. A [Aff. of Garth

Beveridge].)  Plaintiff and Defendant Garth Beveridge agreed that Plaintiff would pay Defendant

Garth Beveridge the same salary that he earned as an employee of Hay-Tec and Jerome Russell.

(Am. Compl. ¶ 24.)  Plaintiff asserts that: (1) Defendant Garth Beveridge's actual previous

remuneration was a salary of $9,166.67 per month; but (2) during employment negotiations,

Defendant Garth Beveridge represented to Plaintiff that he received a total $20,833.67 per month,

comprising $9,166.67 in salary and $11,667.00 in consulting fees.  (*Id.* ¶¶ 25–26.)  Plaintiff

asserts that it relied on Defendant Garth Beveridge's misrepresentation, and agreed to pay

$20,833.67 per month, divided as $9,1667.00 in salary to Defendant Garth Beveridge, and

$11,667.00 in consulting fees to Lucknow Worldwide ("Lucknow"), a Hong Kong corporation

allegedly controlled by Defendant Garth Beveridge.  (*Id.* ¶ 27–29, 31.)  Between August 2002

and January 2005, Plaintiff paid a total of $338,343.00 in consulting fees to Lucknow.  (*Id.* ¶¶

30–31.)

As president of Plaintiff's Hay-Tec and Jerome Russell divisions, Defendant Garth

Beveridge's employment duties included: (1) oversight of the operational aspects of Plaintiff's

business, including accounting, product manufacture, sales, and marketing; and (2) approval and

payment by check of Plaintiff's authorized sales commissions and other authorized fees and

expenses owed to sales representatives and third-party vendors.  (*Id.* ¶¶ 43, 44.)  Between

September 2002 and January 2005, Defendant Garth Beveridge caused Plaintiff to make at least

twenty-eight monthly sales commission payments to Defendant Mustang Enterprises Inc.

("Defendant Mustang") by check (the "Mustang Checks"), totaling $200,043.10.  (*Id.* ¶¶ 45–46.)

The Mustang Checks were drawn on Plaintiff's Colorado bank account.  (*Id.* ¶ 48.)

Defendant Mustang is a dissolved Nevada corporation.  (Am. Compl. ¶ 8; Def. Mustang

Enters. Inc.'s Mot. to Dismiss for Lack of Pers. Jurisdiction and Improper Venue Including Br. of

Supp. at 2 [filed Mar. 29, 2005] [hereinafter "Def. Mustang's Br."].)  Defendants Garth

Beveridge and Dinah Beveridge each own and control half of Defendant Mustang's remaining

interests.  (Am. Compl. ¶ 9; Notice of Filing of the Notarized Aff. of Def. Garth Beveridge in

Supp. of Def. Mustang Enters. Inc.'s Mot. to Dismiss for Lack of Pers. Jurisdiction and Improper

Venue Including Br. in Supp. at 2 [filed Apr. 12, 2005] [hereinafter "Def. Garth Beveridge's

Mustang Aff."]; Def. Dinah Beveridge's Mot. to Dismiss for Lack of Pers. Jurisdiction and

Improper Venue Including Br. of Supp., Ex. A [Aff. of Dinah Beveridge] [filed May 5, 2005]

[hereinafter "Def. Dinah Beveridge's Br."].)  Plaintiff asserts that during the period of time

relevant to this matter, Defendant Mustang has never been an authorized sales representative of

Plaintiff, and Defendant Mustang thus never properly earned the Mustang Checks.  (Am. Compl.

¶¶ 49–52.)  Plaintiff further asserts that: (1) Defendant Garth Beveridge is the sole signatory to

Defendant Mustang's bank account, the same account into which the Mustang Checks were

deposited; (2) Defendants Garth Beveridge and Dinah Beveridge endorsed and deposited the

Mustang Checks into Defendant Mustang's bank account; and (3) Defendant Garth Beveridge distributed the Mustang Check funds to himself and/or Defendant Dinah Beveridge. (*Id.* ¶¶ 59–63.)

Plaintiff alleges that from August 2002 through March 2005, Defendant Garth Beveridge caused twenty-six checks, drawing funds from Plaintiff's Jerome Russell operating account located in Colorado amounting to $22,672.44, to be issued to Bay View Bank in California without Plaintiff's authorization. (*Id.* ¶¶ 67, 71.) Plaintiff alleges that Defendant Garth Beveridge caused the checks to be issued in order to pay his personal car payments. (*Id.* ¶ 67–69.) Plaintiff further alleges that Defendant Garth Beveridge caused two unauthorized payments totaling $27,836.90 to be made from Plaintiff's Jerome Russell operating account to Lucknow. (*Id.* ¶¶ 75–82.) Plaintiff alleges that Defendant Garth Beveridge channeled Plaintiff's funds paid to Lucknow through an account in the British Virgin Islands, and ultimately used Plaintiff's funds to purchase a residence in Texas in August 2004. (*Id.* ¶¶ 83–100.)

Plaintiff alleges that from August 2002 through March 2005, Defendant Garth Beveridge changed identifying tags on Plaintiff's product inventory stored in Plaintiff's warehouses and wrote-off the inventory in Plaintiff's record books, although the inventory remained in Plaintiff's warehouse storage. (*Id.* ¶¶ 103, 104.) Specifically, Plaintiff asserts that in December 2004, Defendant Garth Beveridge traveled to Plaintiff's warehouse in Colorado and wrote-off approximately $750,000.00 of inventory stored in the warehouse, although the inventory remained in storage available for sale. (*Id.* ¶ 103, 106.) Plaintiff alleges that: (1) Defendant Garth

Beveridge has, without Plaintiff's authorization, transferred or sold large amounts of Plaintiff's product inventory to third parties; and (2) Defendant Garth Beveridge and/or Defendant Dinah Beveridge have personally retained the proceeds from the write-off and sale of Plaintiff's inventory. (*Id.* ¶¶ 107, 110.)

During the period of time relevant to the instant case, Defendant Dinah Beveridge was a resident of California or Texas, and was employed by Plaintiff's Jerome Russell division. (Def. Dinah Beveridge's Br. at 3.) Defendant Dinah Beveridge was a salaried employee and was not eligible to receive commissions. (Pl.'s Resp. to Def. Dinah Beveridge's Mot. to Dismiss for Lack of Pers. Jurisdiction and Improper Venue, Ex. 2 [Aff. of Kenneth Bernstein] [filed May 25, 2005] [hereinafter "Pl.'s Resp. to Def. Dinah Beveridge"]; *cf.* Def. Garth Beveridge's Mustang Aff. ¶ 5.) Defendant Dinah Beveridge's work-related duties included managing Plaintiff's "house" customer accounts. (Pl.'s Resp. to Def. Dinah Beveridge at 3.) "House" customer accounts do not generate sales commissions on Plaintiff's products sold to the customer. (*Id.*) Plaintiff alleges that Defendant Dinah Beveridge traveled to Colorado in July 2004 for a trade show, at which Defendant Dinah Beveridge sold Plaintiff's products. (Pl.'s Resp to Def. Dinah Beveridge's Br. at 6.) Plaintiff alleges that Dinah Beveridge caused Defendant Mustang to be paid sales commissions for work performed by Defendant Dinah Beveridge, including sales she made at the July 2004 Colorado trade show. (*Id.*, Ex. 1 [Aff. of James Perry, Addendum]; Def. Garth Beveridge's Mustang Aff. ¶¶ 5–6.)

## 2.    *Procedural History*

On February 1, 2005, Plaintiff filed a verified complaint in this court.  (Compl. [filed Feb. 1, 2005].)  On March 3, 2005, Plaintiff filed an amended verified complaint.  (Am. Compl.)  Plaintiff asserted the following claims against Defendants: (1) fraud against Defendant Garth Beveridge; (2) fraudulent concealment against Defendant Garth Beveridge; (3) civil theft under Colo. Rev. Stat. § 18–4–405 against all Defendants; (4) conversion against all Defendants; (5) breach of fiduciary duty against Defendant Garth Beveridge; (6) negligence and negligent misrepresentation against Defendant Garth Beveridge; and (7) unjust enrichment against all Defendants.[1]  (Am. Compl.)  Plaintiff also seeks restitution, damages, imposition of a constructive trust, and injunctive relief to recover trade secrets.  (*Id.*)  Plaintiff asserted jurisdiction pursuant to 28 U.S.C. § 1332 (2005).  (*Id.*)

On March  14, 2005, Defendant Garth Beveridge filed a motion to dismiss or transfer for lack of personal jurisdiction and improper venue, in which Defendant Garth Beveridge argues that he is not subject to general or specific personal jurisdiction in this court.  (Def. Garth Beveridge's Br.)  On April 4, 2005, Plaintiff filed a response to Defendant Garth Beveridge's motion to dismiss.  (Pl.'s Resp. to Def. Garth Beveridge's Mot. to Dismiss for Lack of Pers. Jurisdiction and Improper Venue [filed Apr. 4, 2004] [hereinafter "Pl.'s Resp. to Def. Garth Beveridge"].)  On April 25, 2005, Defendant Garth Beveridge filed a reply brief to his motion to dismiss.  (Def.

---

[1]In the interest of clarity, I have separated out Plaintiff's claims from prayers for damages. In doing so, I have altered the sequential numbering scheme set forth in Plaintiff's first amended complaint.

Garth Beveridge's Reply to Pl.'s Resp. to the Mot. to Dismiss [filed Apr. 25, 2005] [hereinafter "Def. Garth Beveridge's Reply"].)  This matter is fully briefed.

On March 29, 2005, Defendant Mustang filed a motion to dismiss or transfer for lack of personal jurisdiction and improper venue, in which Defendant Mustang argues that it is not subject to specific personal jurisdiction by this court.  (Def. Mustang's Br.)  On April 12, 2005, Defendant Garth Beveridge filed a notarized affidavit in support of Defendant Mustang's motion to dismiss.  (Def. Garth Beveridge's Mustang Aff.)  On April 18, 2005, Plaintiff filed a response to Defendant Mustang's motion to dismiss.  (Pl.'s Resp. to Def. Mustang Enters. Inc.'s Mot. to Dismiss for Lack of Pers. Jurisdiction and Improper Venue [filed Apr. 18, 2005] [hereinafter "Pl.'s Resp. to Def. Mustang"].)  On May 2, 2005, Defendant Mustang filed a reply in support of its motion to dismiss.  (Def. Mustang Enters. Inc.'s Reply to Pl.'s Resp. to Mot. to Dismiss for Lack of Pers. Jurisdiction and Improper Venue Including Br. of Supp. [filed Mar. 29, 2005] [hereinafter "Def. Mustang's Reply"].)  This matter is fully briefed.

On May 5, 2005, Defendant Dinah Beveridge filed a motion to dismiss or transfer for lack of personal jurisdiction and improper venue, in which Defendant Dinah Beveridge argues that she is not subject to specific personal jurisdiction by this court.  (Def. Dinah Beveridge's Br.)  On May 25, 2005, Plaintiff filed a response to Defendant Dinah Beveridge's motion to dismiss.  (Pl.'s Resp. to Def. Dinah Beveridge.)  On June 16, 2005, Defendant Dinah Beveridge filed a reply in support of her motion to dismiss.  (Def. Dinah Beveridge's Reply to Pl.'s Resp. to Mot. to

Dismiss for Lack of Pers. Jurisdiction and Improper Venue Including Br. of Supp. [filed June 16, 2005] [hereinafter "Def. Dinah Beveridge's Reply"].)   This matter is fully briefed.

## ANALYSIS

### *1.   Standard of Review*

Defendants move to dismiss Plaintiff's amended complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure Rule 12(b)(2), or, in the alternative, to transfer venue, 28 U.S.C. § 1404(a).  (Def. Garth Beveridge's Br.; Def. Mustang's Br.; Defendant Dinah Beveridge's Br.)

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person."  Fed. R. Civ. P. 12(b)(2) (2005).  Plaintiff bears the burden of establishing personal jurisdiction over Defendants.  *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  In the preliminary stages of litigation, Plaintiff's burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, Plaintiff need only make a *prima facie* showing that jurisdiction exists.  *Id*.

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."  *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).  The allegations in

Plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits.'" *Wenz*, 55 F.3d at 1505. (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 [10th Cir. 1992]). If the parties present conflicting affidavits, all factual disputes must be resolved in Plaintiff's favor, and "[P]laintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pled facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992).

Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this state." Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2005).

To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966). Thus, under Colorado law, a

court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the

Fourteenth Amendment. *See OMI Holdings*, 149 F.3d at 1090; *Scheur v. District Court*, 684

P.2d 249 (Colo. 1984). Because the long-arm statute imposes no greater limitation than federal

due process, I proceed directly to the constitutional analysis. *Id.*

**2.     Evaluation of Claims**

    **a.     Personal Jurisdiction**

To determine whether personal jurisdiction is proper, a court first looks to find minimum

contacts with the forum state. *See Int'l Shoe*, 326 U.S. at 316. If minimum contacts are

established, the court then determines whether exercise of personal jurisdiction would be

reasonable. *Id.* The standard of reasonableness is measured by whether exercise of jurisdiction

would offend "traditional notions of fair play and substantial justice." *Id.* Whether a nonresident

has the requisite minimum contacts to establish personal jurisdiction frequently involves an *ad hoc*

analysis of the facts. *Waterval v. District Court*, 620 P.2d 5, 9 (Colo. 1980). Although "[c]ase

authority is helpful to set the boundaries for the 'minimum contacts' concept," a court "must still

weigh the various factors involved in a specific set of circumstances." *Combs Airways* v. *Trans-Air Supply Co.*, 560 F. Supp. 865, 867 (D. Colo. 1983); *see also Shanks v. Westland Equip. &*

*Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982) (a court must evaluate the facts of each case in

resolving personal jurisdiction issues).

Satisfaction of the minimum contacts and reasonableness standards may result in either

general or specific jurisdiction by the court. *Trierweiler v. Croxton & Trench Holding Corp.*, 90

F.3d 1523, 1532 (10th Cir. 1996); *Nat'l Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1231, 1235 (D. Colo. 2000). Plaintiff contends that this court may exercise either general or specific jurisdiction over Defendant Garth Beveridge, and specific jurisdiction over Defendants Mustang and Dinah Beveridge. (Pl.'s Resp. to Def. Garth Beveridge at 10, 12; Pl.'s Resp. to Def. Mustang at 7; Pl.'s Resp. to Def. Dinah Beveridge at 10.) I evaluate Plaintiff's assertions with respect to each Defendant in turn.

### i. *Defendant Garth Beveridge*

### (1) *General Jurisdiction*

Defendant Garth Beveridge argues that this court may not exercise general jurisdiction over him because he has not had continuous and continuous contacts with Colorado. (Def. Garth Beveridge's Br. at 7.) Plaintiff argues that Defendant Garth Beveridge's continuous and systematic contacts exist in the form of his employment by Plaintiff. (Pl.'s Resp. to Def. Garth Beveridge at 12.)

A court may exercise general jurisdiction where the defendant's contacts with the forum state are "continuous and systematic," but do not rise to the level of traditional notions of presence in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). The defendant's "activities within the jurisdiction must render it foreseeable that the party should reasonably anticipate being haled into the forum court." *In re Application to Enforce v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 [1980]). Thus, if the defendant has a sufficient general connection

with the forum state, the defendant need not have a connection with the forum state with respect to the particular cause of action at issue in a lawsuit.  *See Black's Law Dictionary* 856 (7th ed. 1999.)

There is no bright line rule to determine what constitutes systematic and continuous contacts, but courts have established a high threshold.  Among other factors, courts have considered the frequency of a defendant's travel to the forum state, frequency and amount of work a defendant performed in the forum state, and whether a defendant owned property in the forum state.  *See Trierweiler*, 90 F.3d at 1544 (general jurisdiction over individual not appropriate where individual did a small amount of business in Colorado and visited the state often, belonged to the Tenth Circuit bar, lived in Colorado several years prior, and owned property in Colorado); *Wilson v. Belin*, 20 F.3d 644, 650–51 (5th Cir. 1994) *cert. denied*, 513 U.S. 930 (1994) (denying Texas court's general jurisdiction over individual defendant who carried malpractice insurance through a Texas law firm for one year, did three legal projects in Texas in three years, gave a seminar in Texas, served as a pro bono consultant to a Texas historical society, wrote a letter that appeared in a Texas newspaper and a book circulated in Texas, and gave interviews to Texas reporters); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (Swedish resident was not subject to general jurisdiction in California based on attending five conferences there in four years).

Here, Defendant Garth Beveridge's contacts with Colorado are attenuated at best. Defendant Garth Beveridge: (1) has not been a resident of Colorado at any time relevant to the

instant case; (2) owns no property in Colorado; (3) has no bank account in Colorado; (4) has visited Colorado only once since Plaintiff acquired Jerome Rusell and Hay-Tec; and (5) does not regularly visit Colorado. (Def. Garth Beveridge's Br. at 4, Ex. A [Aff. of Garth Beveridge].) More substantive contacts are few in number and, at times, imprecise in nature. Plaintiff alleges that Defendant Garth Beveridge: (1) received salary payments drawn on Plaintiff's Colorado bank accounts; (2) communicated regularly with his supervisors located in Colorado; and (3) caused Plaintiff to ship and sell inventory in Colorado. (Pl.'s Resp. to Def. Garth Beveridge at 12.) Plaintiff gives no indication of the frequency or nature of the communications between Defendant Garth Beveridge and his Colorado supervisors; or of the frequency, nature, or quantity of inventory shipments caused by Defendant Garth Beveridge. (*Id.*) On the balance, these contacts do not rise to the continuous and systematic level requisite to confer general jurisdiction over Defendant Garth Beveridge.

### (2)      *Specific Jurisdiction*

Defendant Garth Beveridge asserts that he is not subject to specific jurisdiction by this court because he lacks sufficient minimum contacts with Colorado. (Def. Garth Beveridge's Br. at 7–10.) Specifically, Defendant Garth Beveridge argues that: (1) his only business contacts with Colorado hinge on Plaintiff's unilateral choice to operate as a Colorado company; (2) he executed wire transfers and issued all checks drawing funds on Plaintiff's Colorado bank account while he was located in California; and (3) he visited Colorado only once while employed by Plaintiff. (*Id.* at 7, Ex. A [Aff. of Garth Beveridge].)

-14-

Plaintiff alleges that Defendant Defendant Garth Beveridge's minimum contacts with Colorado are satisfied by his transaction of business in the state and his commission of tortious acts in the state.  (Pl.'s Resp. to Def. Garth Beveridge at 10.)

A court may exercise specific jurisdiction if a "defendant has 'purposely directed' its activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to those activities.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1116 (D. Colo. 1999).  The defendant must have committed some act to purposefully avail himself of the privilege of conducting activities within the forum state.  *Id.*  Contacts between the defendant and the forum state cannot be "random," "fortuitous," or "attenuated."  *F.D.I.C. v. First Interstate Bank of Denver N.A.*, 937 F. Supp. 1461, 1468 (D. Colo. 1996).  Stated simply, specific jurisdiction is proper where a defendant has certain minimum contacts with the forum state, these minimum contacts relate to the cause of action, and exercise of jurisdiction would not offend fair play and traditional notions of justice.  *See Black's Law Dictionary* 857 (7th ed. 1999).  Minimum contacts are satisfied in Colorado if a nonresident defendant has transacted business within the state or committed tortious acts within the state.  Colo. Rev. Stat. §§ 13–1–124(1)(a)-(b).

First, I evaluate whether Defendant Garth Beveridge has minimum contacts with Colorado.

*(a)*     ***Minimum Contacts***

*(i)*     ***Transacting Business within Colorado***

Defendant Garth Beveridge argues that the only business he transacted in Colorado was necessarily a consequence of his employment by a company headquartered in the state, and, in actuality, he transacted business in California.  (Def. Garth Beveridge's Br. at 9.)  Plaintiff argues that Defendant Garth Beveridge has transacted sufficient business in Colorado to satisfy the minimum contacts standard.  *See First Interstate Bank*, 937 F. Supp. at 1468 (personal jurisdiction may be exercised over a nonresident defendant in Colorado if the defendant has transacted business in the state).

Plaintiff argues that Defendant Garth Beveridge conducted significant business transactions in Colorado as a natural result of their contractual employment relationship, including: accepting employment by a Colorado company and payment from a Colorado bank account, communicating with supervisors located in Colorado, and issuing checks from a Colorado bank account.  (Pl.'s Resp. to Def. Garth Beveridge at 10.)  Plaintiff maintains that these actions manifest Defendant Garth Beveridge's purposeful affiliation with the state.  (*Id.* at 11.)  Damningly, Plaintiff also asserts that Defendant Garth Beveridge did not enter into an employment contract with Plaintiff.  (Pl.'s Resp. to Def. Garth Beveridge, Ex. 1 [Aff. of James Perry]; Def. Garth Beveridge's Br. at 12 fn.1.)  Further, Plaintiff purports to base personal jurisdiction on Defendant Garth Beveridge's communication with supervisors located in Colorado.  (Pl.'s Resp. to Def. Garth Beveridge at 10.)  "The central inquiry in personal

jurisdiction is 'the relationship among the defendant, the forum, and the litigation.'" *Ruggieri v.*

*Gen. Well Serv., Inc.*, 535 F. Supp. 525, 531 (D. Colo. 1982).  Plaintiff gives no indication of the

frequency or nature of such communication, or of the connection between Defendant Garth

Beveridge's communication with his Colorado supervisors and the claims alleged in this case.

Finally, as will be discussed in further detail below, out-of-state receipt or issuance of checks from

a bank in the forum state is not sufficient to confer personal jurisdiction over a nonresident

defendant.  *See Ruggieri*, 535 F.Supp. at 535.

Plaintiff's allegations do not demonstrate that Defendant Garth Beveridge purposefully

availed himself of the privilege of acting in Colorado, and thus do not satisfy the minimum contact

standard necessary to establish personal jurisdiction over Defendant Garth Beveridge.  *See First*

*Interstate Bank*, 937 F. Supp. at 1468.

### *(ii)      Tortious Acts Causing Injury in Colorado*

Defendant Garth Beveridge argues that he lacks sufficient minimum contacts to establish

personal jurisdiction because he: (1) executed wire transfers and issued all checks drawing funds

on Plaintiff's Colorado bank account while he was located in California, and therefore did not

cause injury in Colorado; and (2) visited Colorado only once while employed by Plaintiff, at

Plaintiff's behest, and did not cause injury in Colorado because he was unilaterally forced to be

present.  (*Id.* at 7, Ex. A [Aff. of Garth Beveridge].)  Plaintiff contends that Defendant Garth

Beveridge's minimum contacts are satisfied by the following two tortious acts: (1) execution of

wire transfers and issuance of checks drawing on Plaintiff's Colorado bank account caused injury

to Plaintiff in Colorado; and (2) traveling to Colorado to write-off inventory products from Plaintiff's records and ledgers and retain the products off of Plaintiff's records for his own benefit. (Pl.'s Resp to Def. Garth Beveridge's Br. at 9–10.)

In Colorado, minimum contacts are satisfied: "(1) tortious conduct occurs in Colorado; or (2) tortious conduct initiated in another state causes injury in Colorado." Colo. Rev. Stat. § 13–1–124(1)(a); *Nat'l Union Fire*, 115 F. Supp.2d at 1236 (citation omitted). The injury itself must be felt in Colorado, and must be "direct, not consequential or remote." *Wenz*, 55 F.3d at 1508.

With respect to the checks and wire transfers, the fact that checks are drawn on a Colorado bank account is not sufficient to show harm in Colorado when, as here, the checks are cashed in another state. *See Ruggieri*, 535 F. Supp. at 535 (jurisdiction not proper "merely because the defendants received a check drawn on a Colorado bank"); *Baptichon v. Nev. State Bank*, 304 F. Supp. 2d 451, 460 (E.D.N.Y. 2004) (plaintiff's check drawn on a New York bank account was not sufficient to establish personal jurisdiction over defendant bank in New York, because event causing plaintiff's injury occurred in Nevada, where the check was cashed and deposited). Because Defendant Garth Beveridge requested the wire transfers and wrote and cashed the checks in California, Plaintiff's injury did not occur in Colorado. Specific jurisdiction cannot be established by the alleged injury arising out of the wire transfers issued and checks cashed out-of-state, and the claims relating thereto are not properly before this court. Plaintiff cannot base jurisdiction on this instance of conduct, therefore, Plaintiff's claims against Defendant

-18-

Garth Beveridge must be dismissed to the extent that they relate to out-of-state wire transfer issuance and check-cashing.[2]

Moreover, Defendant Garth Beveridge makes much ado about his infrequent trips to and presence in Colorado, which he argues make him ineligible for personal jurisdiction. (Def. Garth Beveridge's Br. at 9.) The parties do not dispute that Defendant Garth Beveridge traveled to Colorado once while under Plaintiff's employment in order to review Plaintiff's warehouse inventory in December 2004. (Am. Compl. ¶¶ 105–06; Def. Garth Beveridge's Br., Ex. A [Aff. of Garth Beveridge]; Pl.'s Resp. to Def. Garth Beveridge, Ex. 1 [Aff. of James Perry].) Plaintiff alleges that during this trip, Defendant Garth Beveridge visited Plaintiff's Colorado warehouse, and "wrote-off" inventory by marking products to be taken out of inventory record and discarded. (Pl.'s Resp. to Def. Garth Beveridge, Ex. 1 [Aff. of James Perry], Ex. 3 [Aff. of Robert Perry].) Plaintiff further alleges that during the same visit, Defendant Garth Beveridge marked the same products so they would not be discarded, but did not re-enter the products into Plaintiff's inventory records. (*Id.*, Ex. 3 [Aff. of Robert Perry].) Plaintiff asserts that Defendant Garth Beveridge sold some of the written-off inventory at trade shows. (Pl.'s Resp. to Def. Garth Beveridge at 6.)

---

[2]Specific jurisdiction necessarily limits a court's jurisdiction over a defendant to the claims arising out of the actions that constitute defendant's minimum contacts or purposeful availment. *See Ruggieri*, 535 F. Supp. at 536–37; *Van Schaak & Co. v. District Court*, 189 Colo. 145, 147 (Colo. 1975) (citation omitted). Here, the claims in Plaintiff's first amended complaint are drafted in such a manner as to cover multiple alleged actions by multiple Defendants. As such, Plaintiff's claims cannot be dismissed in their entirety. As discussed below, jurisdiction over the Defendants is improper, and this minor issue is thus mooted by the outcome of this order.

Defendant Garth Beveridge repeatedly emphasizes that he traveled to Colorado only once and at Plaintiff's behest, thereby unraveling any potential rationale for personal jurisdiction to lie over him.  (Def. Garth Beveridge's Br. at 9, 13.)  Defendant Garth Beveridge appears to argue that Plaintiff unilaterally forced his presence in Colorado, and therefore his actions while in the state cannot be attributed to him.  This argument is utterly unavailing, and improperly conflates physical presence with injury felt and suffered in Colorado.  Defendant Garth Beveridge's argument effectively suggests that by requesting him to travel to Colorado, Plaintiff requested Defendant Garth Beveridge to commit a tort to its own detriment while in the state.  In accordance with the foregoing, specific jurisdiction is properly established over Defendant Garth Beveridge with respect to the inventory write-off, the injury resulting therefrom, and the causes of action relating thereto.

### (b)       *Traditional Notions of Fair Play and Substantial Justice*

Once minimum contacts have been established, a court must determine whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316; *Encore Prods.*, 53 F. Supp. 2d at 1118.  In making this determination, a court may consider: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *See*

*Asahi*, 480 U.S. at 113; *OMI Holdings*, 149 F.3d at 1086.  I discuss the relevant factors with respect to the exercise of personal jurisdiction over Defendant Garth Beveridge below.

### *(i)*        *Burden on Defendant*

While not dispositive, the burden on the defendant of litigating the case in a foreign forum is a significant concern in determining the reasonableness of personal jurisdiction.  *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980).  This factor serves to prevent filing claims in distant fora where the burden of appearing is onerous.  *Id.*

This factor does not weigh heavily in either party's favor.  Defendant Garth Beveridge maintains that the burden would be significant, and emphasizes that: (1) the situs of the alleged tortious acts, and (2) Defendant Garth Beveridge's relevant intended witnesses and documents are located in California.  (Def. Garth Beveridge's Br. at 12.)  Plaintiff asserts that its intended witnesses live in Colorado and underscores that Plaintiff itself is organized as a Colorado entity.  (Pl.'s Resp. to Def. Beveridge at 13–14.)  The burden on Defendant Garth Beveridge to litigate the case in Colorado would not be prohibitively great, or at least would not outweigh the burden on Plaintiff to litigate the case elsewhere.

### *(ii)*       *Forum State's Interest in Resolving the Dispute*

States have a protectable interest in providing a forum in which their residents can seek redress for injuries caused by nonresident actors.  *OMI Holdings*, 149 F.3d at 1096.  This factor weighs in Plaintiff's favor.  Here, Colorado has an interest in protecting resident Plaintiff's forum

in which to seek redress for the claims arising out of nonresident Defendant Garth Beveridge's

alleged write-offs.

### (iii)    Plaintiff's Interest in Convenient and Effective Relief

This factor focuses on whether a plaintiff's chances of recovery would be greatly

diminished by forcing litigation in another forum due to that forum's laws or because the burden

would be so overwhelming as to practically foreclose pursuit of the lawsuit.  *OMI Holdings*, 149

F.3d at 1097.  It seems Plaintiff's chances of recovery are not limited only to this court for this

matter.  This factor does not weigh heavily in either party's favor.

### (iv)    Judicial System Interest in Efficient Resolution

This factor focuses on whether Colorado is the most efficient place to litigate this dispute.

*Encore Prods.*, 53 F. Supp. 2d at 1119.  Key factors in this inquiry include the location of

witnesses, where the wrong underlying the lawsuit occurred, and whether jurisdiction is necessary

to prevent piecemeal litigation.  *OMI Holdings*, 149 F.3d at 1097.  As to the claims arising out of

the alleged wrongful write-off, this factor is in Plaintiff's favor.  Plaintiff's witnesses to Defendant

Garth Beveridge's alleged write-offs live in Colorado, the inventory write-off allegedly took place

in Colorado.[3]  Piecemeal litigation with respect to claims arising only out of the alleged write-off

is not a concern.

### (v)    Shared Interest of the Several States

---

[3]Plaintiff also alleges that Defendant Garth Beveridge wrote-off inventory in California. (Pl.'s Resp. to Def. Garth Beveridge, Ex. 1 [Aff. of James Perry], Ex. 3 [Aff. of Robert Perry].)

This final factor focuses on "whether the exercise of personal jurisdiction by [the forum state] affects the substantive social policy interests of other states." *Encore Prods.*, 53 F. Supp. 2d at 1119.  It would be difficult to demonstrate how exercising jurisdiction over Defendant Garth Beveridge with respect to claims arising out of the alleged write-off could affect social policy interests of other states.

Thus, the balance of the factors demonstrates that it would not offend traditional notions of fair play and substantial justice to exercise specific personal jurisdiction over Defendant Garth Beveridge with respect to claims arising out of the alleged write-offs.

### ii.    *Defendant Dinah Beveridge*

Defendant Dinah Beveridge maintains that she is not subject to specific jurisdiction by this court because she lacks sufficient minimum contacts with Colorado, because her only contacts consist of a sales trip made at Plaintiff's behest and commission checks drawn Plaintiff's Colorado bank account.  (Def. Dinah Beveridge's Br. at 8–11.)  Plaintiff contends that Defendant Dinah Beveridge's minimum contacts are satisfied by her tortious actions that caused Plaintiff injury in Colorado.  (Pl.'s Resp. to Def. Dinah Beveridge at 9–10.)

Specifically, Plaintiff argues that Defendant Dinah Beveridge purposefully directed tortious actions at Colorado when she traveled to a trade show in the state, sold Plaintiff's products there, and paid Defendant Mustang a sales commission by check, from which she ultimately benefitted.  (*Id.* at 9–10, Ex. 1 [Aff. of James Perry, Addendum].)  The sales commission checks in contention were drawn on Plaintiff's Colorado bank account and issued,

executed, and deposited in California.  (*Id.* at 16; Am. Compl. ¶¶ 59, 61–63; Def. Dinah

Beveridge's Br., Ex. A [Aff. of Dinah Beveridge].)

Plaintiff's argument is logical at first blush, but ultimately unconvincing.  For personal

jurisdiction to be appropriate, "the cause of action must arise from the consequences in the forum

state of the defendant's activities."  *Van Schaak*, 189 Colo. at 147; *see also Waterval*, 620 P.2d at

9 n.3 (holding that there is no basis for jurisdiction if there is a minimum of contacts, and the

cause of action does not arise out of the contacts) (citation omitted).  Plaintiff fails to connect

directly Defendant Dinah Beveridge's purported purposeful availment — traveling to the

Colorado trade show — with Plaintiff's actual injury — removal of monies from Plaintiff's bank

account caused by the cashing of the sales commission checks.  For the same reasons expressed

and discussed at length (at *Analysis,* § 2ai[2][a][ii]), *supra*), out-of-state cashing of checks drawn

on a forum state bank account does not rise to the level of tortious injury appropriate to confer

personal jurisdiction over Defendant Dinah Beveridge.  Accordingly, Plaintiff's claims against

Defendant Dinah Beveridge must be dismissed.

### iii.    *Defendant Mustang*

Defendant Mustang maintains that it is not subject to specific jurisdiction by this court

because it lacks sufficient minimum contacts with Colorado, because its only contacts consist of

checks drawn Plaintiff's Colorado bank account.  (Def. Mustang's Br. at 7–8.)  Defendant

Mustang emphasizes that it is a dissolved Nevada corporation that has never: (1) solicited or

transacted business in Colorado; (2) owned real or personal property in Colorado; (3) maintained

offices or employees in Colorado; or (4) maintained bank accounts in Colorado.  (Def. Garth

Beveridge's Mustang Aff. ¶ 3.)  Plaintiff alleges that Defendant Mustang created minimum

contacts when it purposefully directed tortious actions at Colorado when it accepted and cashed

commission checks drawn on Plaintiff's Colorado bank account.  (Pl.'s Resp. to Def. Mustang at

6–7.)

      Viewing the allegations in a light most beneficial to Plaintiff, substantial evidence suggests

that Defendant Mustang was a shell corporation under Defendants Garth Beveridge's and Dinah

Beveridge's exclusive control.  (Am. Compl. ¶ 8; Def. Garth Beveridge's Mustang Aff. ¶ 2.)

Defendants Garth Beveridge and Dinah Beveridge allegedly caused sales commission checks to be

paid to Defendant Mustang, cashed the checks, and kept the funds for themselves.  (Am. Compl.

¶ 66; Pl.'s Resp. to Def. Mustang, Ex. 1 [Aff. of James Perry].)  As set forth above, Defendants

Garth Beveridge and Dinah Beveridge allegedly issued, endorsed, and deposited the commission

checks into Defendant Mustang's account while located in California.  (Am. Compl. ¶¶ 61–63;

Pl.'s Resp. to Def. Mustang, Ex. 1 [Aff. of James Perry]; Dinah Beveridge's Br., Ex. A [Aff. of

Dinah Beveridge]; Def. Garth Beveridge's Mustang Aff. ¶ 7.)  In accordance with the reasoning

set forth above (at *Analysis,* § 2ai[2][a][ii], *supra*), the situs of injury is where the checks were

cashed — in this case in California where the checks were deposited or in Nevada where

Defendant Mustang's bank account was actually located.  Plaintiff cannot demonstrate that

Defendant Mustang caused injury in Colorado.  Therefore, personal jurisdiction over Defendant

Mustang is not proper and Plaintiff's claims against Defendant Mustang must be dismissed.

### b.        Motion to Transfer

Defendants move to transfer venue, should this court not dismiss Plaintiff's claims for lack of personal jurisdiction.  [Def. Garth Beveridge's Br.; Def. Dinah Beveridge's Br.; Defendant Mustang's Br.]  Plaintiff maintains that transfer of this case is improper.  (Pl.'s Resp. to Def. Garth Beveridge.)

A transfer of venue between federal courts is governed by 28 U.S.C. § 1404 (2005). Section 1404(a) provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The party seeking the transfer bears the burden of establishing that the existing forum is inconvenient.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  A court's decision whether to transfer a case is based on a balance of factors, but plaintiff's choice of forum should not be disturbed unless the evidence and the circumstances of the case are strongly in favor of the transfer.  *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967); *Cargill, Inc. v. Prudential Ins. Co.*, 920 F. Supp. 144, 146 (D. Colo. 1996).  When deciding whether to transfer a case pursuant to section 1404(a), the court considers factors including the following:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

-26-

*Tex. Gulf Sulphur*, 371 F.2d at 147 (citation omitted); *Chrysler Credit Corp.*, 928 F.2d at 1516.

Defendants argue that all of the following are located in California: (1) the situs of the majority of the alleged tortious acts; (2) Defendants Garth Beveridge's and Dinah Beveridge's offices and certain Plaintiff's offices; (3) Defendants' intended witnesses; and (4) relevant accounting and financial records.  (Def. Garth Beveridge's Br. at 15.)  Moreover, Defendant Garth Beveridge argues that California law would apply in the instant case because of the significant relationship test used in Colorado for choice of law issues.  (*Id.* at 15–16.)

Plaintiff underscores that: (1) two of its critical witnesses live in Colorado; (2) many banking, company, and inventory records are located in Colorado; and (3) Plaintiff's claims are based on Colorado law, which would best be analyzed by a local court.  (Pl.'s Resp. to Def. Garth Beveridge at 16–17.)  Plaintiff asserts that Defendants have only two arguments to support transfer — Defendants' inconvenience and the purported applicability of California law — and both arguments are invalid.  (*Id.* at 17–18.)  I disagree.

On the balance, the factors weigh heavily in Defendants' favor.  The situs of Plaintiff's injury underlying the majority of Plaintiff's claims —  injury caused by the wire transfers and checks —  is California.  Defendants Garth Beveridge and Dinah Beveridge would likely be subject to general jurisdiction in California because both reside or have resided in the state, work in the state, have bank accounts in the state, and have other systematic and continuous contacts with the state.  (Def. Garth Beveridge's Br., Ex. A [Aff. of Garth Beveridge]; Def. Dinah Beveridge's Br., Ex. A [Aff. of Dinah Beveridge].)  Defendants Garth and Dinah Beveridge

allegedly received, endorsed, and deposited the Mustang Checks in California for Defendant

Mustang's benefit.

Further, as discussed (at *Analysis*, § 2ai, *supra*), Defendant Garth Beveridge is the only

Defendant subject to jurisdiction, and specific personal jurisdiction over Defendant Garth

Beveridge only extends to Plaintiff's claims arising from Defendant Garth Beveridge's alleged

wrongful inventory write-off.  None of Plaintiff's other claims is properly before this court.  As

such, Plaintiff's allegation that Defendant Garth Beveridge also wrongfully wrote-off Plaintiff's

inventory in California is particularly relevant, and militates in favor of a transfer.  (Pl.'s Resp. to

Def. Garth Beveridge, Ex. 1 [Aff. of James Perry], Ex. 3 [Aff. of Robert Perry].)

Therefore, I find the interests of justice would be best served in this case by a transfer

Plaintiff's surviving claims in this case to California.

## 3.    *Conclusions*

Based on the foregoing it is therefore ORDERED that:

a.    Defendant Garth Beveridge's motion to dismiss (#18) is DENIED in part and

GRANTED in part.  The motion is DENIED as to Plaintiff's claims for fraud,

fraudulent concealment, civil theft, conversion, breach of fiduciary duty,

negligence and negligent misrepresentation, and unjust enrichment relating to and

arising out of Defendant Garth Beveridge's alleged inventory write-off.  The

motion is GRANTED as to Plaintiff's other claims against Defendant Garth

Beveridge, which are dismissed without prejudice.

b.      Defendant Garth Beveridge's motion to transfer (#18) is GRANTED in part and

DENIED in part.  The motion is GRANTED as to Plaintiff's surviving claims for

relief for fraud, fraudulent concealment, civil theft, conversion, breach of fiduciary

duty, negligence and negligent misrepresentation, and unjust enrichment relating to

and arising out of Defendant Garth Beveridge's alleged inventory write-off, which

are transferred to the United States District Court for the Southern District of

California,  pursuant to 28 U.S.C. § 1404(a).  The motion is DENIED as moot as

to as to Plaintiff's dismissed claims.

c.      Defendant Dinah Beveridge's motion to dismiss (#37) is GRANTED.

d.      Defendant Mustang's motion to dismiss (#27) is GRANTED.

Dated this 2nd day of December, 2005.


                                        BY THE COURT:

                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        United States District Judge